## West *v.* Dyson, Appellant.

*Corporations—Increase of corporate indebtedness—Consent of stock-holders—Real estate company—Mortgage—Usual course of business.*

A Pennsylvania corporation organized for the purpose of "erecting buildings, purchasing, holding, leasing, mortgaging, improving and selling real estate," may, without the consent of its stockholders as provided by sec. 7, art. XVI, of the constitution, and the Acts of April 18, 1874, P. L. 61, and February 9, 1901, P. L. 3, increase its indebtedness by a mortgage, the proceeds of which are to be used "in the liquidation of debts of the corporation contracted for building materials, labor, etc., in the erection of a certain building upon its real estate, and in the purchase of adjoining land, and in the erection of other buildings."

Argued Jan. 10, 1911. Appeal, No. 306, Jan. T., 1910, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1909, No. 3,767, on case stated in suit of C. West & Company *v.* John S. Dyson. Before Fell, C. J., Brown, Mestrezat, Potter, Elkin and Moschzisker, JJ. Affirmed.

Case stated to determine the legality of a mortgage.

Willson, P. J., filed the following opinion:

The plaintiff concern, doing business under the name of C. West & Company, is a corporation of this commonwealth created for the purpose of "erecting buildings, purchasing, holding, leasing, mortgaging, improving and selling real estate."

On October 1, 1909, the defendant agreed to lend to the plaintiff the sum of $10,000, the repayment of which to be secured by a valid and marketable mortgage upon real estate belonging to the plaintiff. A portion of the money thus agreed to be loaned was intended by the plaintiff to be used "in the liquidation of debts of the plaintiff contracted for building materials, labor, etc., in the erection of a certain building upon its real estate, and the balance of said proceeds" were also intended by the

plaintiff "to be used in the purchase of adjoining land and in the erection of other buildings."

It was likewise a part of the agreement between the parties to the transaction that "pending the examination of title and preparation of papers, plaintiff was to proceed with the operation." Relying upon this agreement, the plaintiff incurred various and considerable "expenses in the purchase of materials, supplies, cost, etc." Of these expenditures "the defendant had full knowledge and notice."

Subsequently the plaintiff executed a first mortgage— presumably upon real estate, although the agreement does not so state—in due form, tendered the same to the defendant and demanded the payment of the said sum of $10,000. The defendant declined to pay over the money, on the ground that the mortgage was invalid and unmarketable, because not authorized by the stockholders and preceded by the formalities required by sec. 7 of art. XVI of the constitution of the commonwealth, and by the provisions of the Acts of assembly of April 18, 1874, P. L. 61, and February 9, 1901, P. L. 3, and their supplements.

The parties agree that because of the refusal of the defendant to lend the said sum of money as before stated, the plaintiff was unable to proceed with the contemplated operation for a considerable time, and thereby suffered damages to the extent of $1,679.97.

Notwithstanding the agreement, for this case stated does not state the fact expressly, it is evident that the plaintiff corporation did not have any authority derived from its stockholders, in accordance with the provisions of the constitution and the said acts of assembly for the borrowing of the money referred to, or for the creation of said mortgage. Such a statement of facts is necessarily implied in the agreement of the parties' counsel, and upon that theory the case is framed and the argument has proceeded.

But one question arises under the facts as agreed upon, and that is, would the borrowing by the plaintiff of the

said sum of $10,000 for the purposes before stated, and the execution and delivery to the defendant of a mortgage on plaintiff's real estate to secure the repayment of the said sum of money, have been an "increase of indebtedness" within the meaning of the constitution and the acts of assembly? Practically, the question relates only to the effect of the constitutional prohibition, for the reason that the acts of assembly are intended simply to furnish a method of carrying out, in detail, what the constitution allows to be done. The statutes, of course, cannot modify or annul the provisions of the organic law.

In endeavoring to apply to the case what that law prohibits or permits, we think it should be conceded that it was not intended to prevent a corporation engaged in business from transacting its affairs in the ordinary way, by resorting to credits in the making, e. g., of purchases of merchandise, or from borrowing money in good faith in the ordinary course of business. There seems to be a practical necessity to put such a construction upon the language of the constitution. That language is unlimited and without exception, when taken in its literal sense, but it should be given, if possible, such a construction as will effectuate the purpose which a sound judgment would determine to have been in mind when the constitution was framed and adopted, without unnecessarily crippling the conduct of business affairs. The legislature appears to have been inspired by that thought when, in sec. 4 of the act of February 9, 1901, it was provided that nothing in the act should be construed as applicable to the "case of indebtedness contracted in the usual course of corporation business."

The Supreme Court of the commonwealth has also refused to put a literal interpretation upon the language of the constitution. In Manhattan Hardware Co. v. Phalen, 128 Pa. 110, a mortgage was made by a manufacturing corporation to secure a debt incurred in improving its property, in the hiring of labor and in the purchase of materials. It was held as follows: "It is consonant to

reason and settled by authority that debts incurred by a corporation in the course of its ordinary business are not affected by the constitutional provision or by the Act of Assembly referred to." Substantially the same view was taken by that court in Powell v. Blair, 133 Pa. 550, and Ahl v. Rhoads, 84 Pa. 319.

It may be, and doubtless is, difficult to state in the form of a positive proposition and in a general way what cases would or would not fall within the meaning of the constitution. There can be no question, we believe, that the evil which the framers of that instrument had in view and which they intended to prevent, was the reckless and ofttimes wicked increase of capital stock and of bonded indebtedness by the large corporations whose history, in many instances, has exhibited such inconsiderate and undeliberate financiering as has resulted in most serious disasters to the corporations concerned and to those who invested in their securities.

At the same time it can hardly be said that the construction of the constitutional provisions would be reasonable which would confine their application to public service corporations, e. g., or to any particular class or grade of corporations. Moreover, even in the case of corporations of that large class which is most tempted or most likely to resort to the issuing of bonds secured by mortgages upon their property and franchises, it can hardly be contended that every loan which might be obtained from a bank in the ordinary course of business would be such an increase of indebtedness as was intended to be prohibited, in the absence of consent obtained from the stockholders, etc. The mere making of a mortgage is not the thing prohibited. That is a mere incident. The debt secured by the mortgage is the substantial element to be considered. It seems to be necessary to hold that each case must stand by itself, and that, when it appears that a debt is created or a loan obtained in good faith and for a real consideration in the ordinary course of a corporation's current business, the obligation to pay the debt or repay the loan is valid

and binding upon the corporation. That conclusion coincides with the views expressed in the opinion of the Supreme Court in Manhattan Hardware Co. v. Phalen, 128 Pa. 110, and we shall endeavor to apply the principle to the present case, while, at the same time, we recognize that the question is not free from embarrassing aspects, and that there are elements in it which will amply justify a resort to the highest tribunal of our state, in order to obtain a chart which will point a safe course through such difficulties as exist in the present case.

In the application of the principle just advanced to the case in hand, we think that but one conclusion is reasonable. This corporation, C. West & Company, was formed for the purpose of dealing in real estate, by purchasing, selling and mortgaging the same, and by building thereon. Of course, the enumeration of "mortgaging" as one of its purposes gave it no greater power to create a debt than it would have had otherwise. If it was a lawful corporation, however, authorized to buy and sell real estate and to improve the same, it must be regarded as having the right to conduct that business in the ordinary way, and to resort to the usual methods of obtaining money to enable it to carry on its business.

The obtaining of credit in the usual course of business is something which, in these modern times, is not only a universal practice, but it may be regarded as absolutely essential to any successful business enterprise. In the present case, the money which the defendant agreed to lend was needed for the purpose of discharging debts already incurred in the course of the corporation's business, and to enable it in the ordinary course of its affairs to carry out the purposes for which it was formed.

That being so, the case falls within the protection of the principle which we have previously stated, and does not come under the ban of the constitution or either of the acts of assembly mentioned.

Under the provisions of the agreement for the case stated it therefore becomes our duty to direct that judgment.

shall be entered in favor of the plaintiff for $1,679.97, with interest from December 1, 1909.

This amount strikes us as somewhat excessive and unreasonable, but, in view of the agreement of counsel, we have no control over it.

*Error assigned* was the judgment of the court.

*Elwood J. Turner,* with him *Thomas O. Haydock, Jr.,* for appellant.

*Allen M. Stearne,* for appellee.

PER CURIAM, March 20, 1911:

The judgment is affirmed on the opinion of the learned president judge of the common pleas.